## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Matthew LaCroix, as an individual and as a
representative of the classes,

               Plaintiff,

v.

U.S. Bank, N.A. and U.S. Bank Home
Mortgage,

               Defendants.

**CLASS ACTION COMPLAINT
(JURY TRIAL DEMANDED)**

Court File No. _____

Plaintiff Matthew LaCroix ("Plaintiff"), by and through his attorneys, Nichols Kaster,

PLLP, and on behalf of himself, the Putative Classes set forth below, and in the public

interest, brings the following Complaint against Defendants U.S. Bank, N.A. and U.S. Bank

Home Mortgage (collectively, "U.S. Bank" or "Defendants"):

### PRELIMINARY STATEMENT

1.     Plaintiff and the Putative Class members have mortgages secured by

residential property, and were required to purchase flood insurance by U.S. Bank.

2.     U.S. Bank has systematically violated the legal rights of Plaintiff and other

Putative Class members in two fundamental respects, as set forth below

3.     First, U.S. Bank unfairly, unjustly, and unlawfully forced Plaintiff and other

Putative Class members to purchase and maintain flood insurance in amounts greater than

required by law, greater than required by their mortgage[1] agreements, and greater than U.S.

Bank's financial interest in their property, without justification, and without proper or

adequate disclosure of such requirements in the relevant loan and mortgage documents.

---

[1] The term "mortgage" as used herein also refers to deeds of trust in states that use deeds of
trust as security instruments for loans secured by residential property.

4.     Second, U.S. Bank unfairly, unjustly, and unlawfully profited from force-placing flood insurance on Plaintiff's property and the property of other Putative Class members, by charging Plaintiff and other borrowers amounts in excess of the net costs incurred by U.S. Bank for such flood insurance and by arranging for kickbacks, commissions, or other compensation for U.S. Bank and/or its affiliates in connection with force-placed (also known as lender-placed) flood insurance.

5.     U.S. Bank engaged in this conduct in bad faith, knowing that its actions were contrary to applicable law, reasonable commercial standards of fair dealing, and the reasonable expectations of borrowers upon entering into their mortgage agreements.

6.     Based on U.S. Bank's conduct as described herein, Plaintiff asserts claims against U.S. Bank for (1) breach of contract/breach of the covenant of good faith and fair dealing; (2) unjust enrichment; (3) breach of fiduciary duty/breach of trust; and (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

7.     Plaintiff asserts these claims on behalf of two proposed classes and two proposed sub-classes of U.S. Bank borrowers.

8.     Plaintiff asserts his breach of contract/breach of covenant of good faith and fair dealing claim (Count One) on behalf of a putative nationwide Excess Insurance Class consisting of all persons who were required by U.S. Bank, on or after November 2, 2005, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

2

9.      Plaintiff asserts his unjust enrichment claim (Count 2) on behalf of a separate nationwide Lender-Placed Insurance Class consisting of all persons who were charged for lender-placed flood insurance by U.S. Bank and/or paid such charges to U.S. Bank, in whole or in part, on or after November 2, 2005.

10.     Plaintiff asserts his breach of fiduciary duty/breach of trust claim (Count 3) on behalf of an Escrow Sub-Class consisting of all persons in the Excess Insurance Class or the Lender-Placed Insurance Class whose flood insurance premiums were escrowed by U.S. Bank.

11.     Finally, Plaintiff asserts his CUTPA claim (Count 4) on behalf of a Connecticut Sub-Class consisting of all persons in the Excess Insurance Class or the Lender-Placed Insurance Class whose mortgage loan or line of credit with U.S. Bank was secured by real property in the State of Connecticut, and who were subject to U.S. Bank's flood insurance requirements and/or had lender-placed flood insurance coverage purchased for their property by U.S. Bank on or after November 2, 2008.

12.     Plaintiff and the Putative Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for U.S. Bank's unlawful conduct, as described herein.

## **THE PARTIES**

13.     Individual and representative Plaintiff Matthew LaCroix resides in Manchester, Connecticut.  Plaintiff is a member of each of the Putative Classes as defined below.

14.     Defendant U.S. Bank, N.A. is a national banking association headquartered in Cincinnati, Ohio.  U.S. Bank does business in Connecticut and several other states

throughout the country.  Its parent company, U.S. Bancorp, is headquartered in Minneapolis, Minnesota.

15.     Defendant U.S. Bank Home Mortgage services mortgages for U.S. Bank, N.A. throughout the United States, including in the State of Connecticut.  U.S. Bank Home Mortgage is headquartered in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

16.      This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of Connecticut, and Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of the Putative Classes.

17.     Venue is proper in the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1391, because U.S. Bank resides in Minnesota, and a substantial part of the events giving rise to Plaintiff's claims arose in Minnesota.

## FACTUAL ALLEGATIONS

*Origination of Plaintiff's Mortgage Loan*

18.     On or about November 15, 2005, Plaintiff obtained a loan from TD Banknorth, N.A. ("TD Bank") for $112,400, which was secured by a mortgage on his residential condominium unit ("Property").  *See Exhibit 1.*

19.     U.S. Bank acquired Plaintiff's mortgage loan from TD Bank on the same day (November 15, 2005).   U.S. Bank, N.A. is the current lender-in-interest to Plaintiff's mortgage, and U.S. Bank Home Mortgage services Plaintiff's mortgage loan on behalf of U.S. Bank, N.A.

*Flood Insurance Requirements for Plaintiff's Property*

20.     At the time Plaintiff originated his mortgage loan, he was not required to maintain flood insurance on his Property because his Property did not fall within a Special Flood Hazard Area.  However, on or around September 26, 2008, the Federal Emergency Management Agency ("FEMA") conducted a map revision and determined that Plaintiff's Property now falls within a SFHA.

21.     The National Flood Insurance Act ("NFIA") requires lenders to ensure that any improved property in a SFHA that secures a loan or line of credit is covered by flood insurance.  Under the NFIA, this insurance must be maintained "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act, ***whichever is less.***"  42 U.S.C. § 4012a(b)(1) (emphasis added).

22.     Plaintiff's mortgage does not require him to maintain flood insurance on his Property in excess of the minimum amount required by federal law (i.e., in excess of his principal balance).  Paragraph 4 of Plaintiff's mortgage states that Plaintiff is obligated to "insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD").  HUD's website, in turn, provides as follows:

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm (last visited Oct. 31, 2011); *accord*, 24 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . . in an amount at least equal to . . . the outstanding balance of the mortgage").[2]

---

[2] HUD's flood insurance requirements have not changed during the relevant time period.

*U.S. Bank Demands and Force-Places Excessive Coverage*

23.     As of November 15, 2009, Plaintiff's condominium association maintained $1,110,200 worth of flood insurance coverage on Plaintiff's condominium building under a master policy. *See Exhibit 2*. Because there are 16 units in the building (including Plaintiff's unit), this amounts to $69,387.50 per unit.

24.     On November 16, 2009 (four years after U.S. Bank acquired Plaintiff's mortgage), U.S. Bank sent Plaintiff a form letter ("Initial Form Letter") claiming that he was required by federal law to "maintain flood insurance in an amount at least equal to the lesser of: (1) The replacement cost of [his] dwelling; [or] (2) The maximum available under National Flood Insurance Program, currently $250,000.00." *See Exhibit 3*. This Initial Form Letter further stated that "[i]f we do not receive adequate flood insurance coverage within 45 days, as a federally regulated lender, U.S. Bank is required to lender place coverage." *Id.*

25.     These statements in the Initial Form Letter were deceptive and misleading. Under the NFIA (and the terms of his mortgage), Plaintiff was not required to maintain flood insurance in excess of his principal balance. *See supra* at ¶¶ 21-22. Further, under the NFIA, lenders are only required to force-place flood insurance up to the amount ***required*** by the statute. *See* 42 U.S.C. § 4012a(e)(1)–(2) ("[If] the lender or servicer for the loan determines that the building or mobile home . . . is covered by such insurance in an amount less than the amount ***required*** for the property pursuant to [this statute,] the lender or servicer for the loan shall . . . purchase the insurance on behalf of the borrower . . . .") (emphasis added).

26.     The Initial Form Letter further stated that if Plaintiff did not obtain additional flood insurance coverage, U.S. Bank would procure additional coverage for him (in the amount of the alleged deficiency), and add the premium cost to his escrow account. In

addition, the Initial Form Letter indicated that any insurance coverage purchased by U.S. Bank likely would be "more expensive" than flood insurance coverage that Plaintiff could obtain on his own.

27.     On or about January 27, 2010, U.S. Bank sent Plaintiff a "Notice of Flood Insurance Placed by Lender Due to Deficient Coverage" ("Notice of Force-Placement").  *See Exhibit 4.*  In the Notice of Force-Placement, U.S. Bank informed Plaintiff that it had purchased a flood insurance policy for Plaintiff's property from American Security Insurance Company ("ASIC"), and stated that "[t]he policy amount is based on the shortage in coverage between your required flood coverage and your current flood insurance policy." On information and belief, U.S. Bank and/or its affiliates received a kickback or commission from ASIC on this lender-placed policy.[3]

28.     The Notice of Force-Placement enclosed a "Memorandum of Insurance" from ASIC, showing a flood insurance coverage amount of $64,488 and a premium amount of $580.  *See Exhibit 5.*[4]  However, the Memorandum of Insurance expressly stated: "THIS INSURANCE WILL NOT PROVIDE AN AMOUNT OF COVERAGE GREATER THAN THE NET AMOUNT YOU OWE ON THE MORTGAGE."  *Id.*  Moreover, the Notice of Force-Placement indicated that "[c]overage under this policy will only apply if a loss to the building exceeds the amount of coverage provided by your flood insurance policy."  *Exhibit*

---

[3] ASIC pays commissions to other lenders or their affiliates on lender-placed flood insurance coverage.  *See, e.g., Hofstetter v. Chase Home Fin. LLC,* No. 10-1313, 2011 WL 1225900 (N.D. Cal. Mar. 31, 20011) (certifying class of borrowers to pursue claim that commissions were paid by ASIC to an affiliate of Chase on lender-placed flood insurance coverage). Moreover, the commission arrangements between major banks and insurance companies that issue force-placed coverage (including ASIC) have been reported in *American Banker* magazine.  *See Exhibit 11.*
[4] Although U.S. Bank's Notice of Force-Placement was dated January 27, 2010, the lender-placed policy was backdated to the beginning of the year (January 1, 2010).

*4.* Therefore, this lender-placed coverage was ***worthless*** to the extent that the combined value of the existing master policy and the lender-placed policy exceeded Plaintiff's principal balance.

29.     As noted above, Plaintiff's share of the existing master policy was $69,387.50. *See supra* at ¶ 23. The additional coverage that U.S. Bank purchased ($64,488) therefore resulted in a unit coverage amount of at least $133,875.50. This coverage amount exceeded the amount of Plaintiff's principal balance (which was approximately $103,600 at the time) by more than $30,000. This excess coverage was ***not*** required under the NFIA, ***not*** required by HUD, ***not***  authorized under Plaintiff's mortgage, and provided ***no*** value to Plaintiff under the express terms of the lender-placed policy.

30.     As a result of this unnecessary, unauthorized, and worthless excess coverage, Plaintiff's escrow account was charged $580. U.S. Bank then claimed that there was a "shortage" in Plaintiff's escrow account, and sought to recover this alleged "shortage" from him. Feeling helpless and not wanting to jeopardize his credit or his home, Plaintiff promptly paid the alleged "shortage."

### U.S. Bank Demands <u>More</u> Excessive Coverage

31.     On November 24, 2010, U.S. Bank sent Plaintiff another flood insurance notice ("Second Flood Insurance Notice"), claiming that "you still do not have sufficient coverage." *Exhibit 6*. This Second Flood Insurance Notice stated:

> If we do not receive adequate flood insurance coverage by 11/9/2010 [15 days ***before*** the date of the letter], then as a federally regulated lender, U.S. Bank is required to lender place coverage.

The Second Flood Insurance Notice further stated that the premium cost for this additional lender-placed insurance would be paid from Plaintiff's escrow account.

32.     Shortly thereafter, on December 15, 2010, U.S. Bank sent Plaintiff a second Notice of Flood Insurance Placed by Lender Due to Deficient Coverage ("Second Notice of Force-Placement").   *See Exhibit 7*.   This Second Notice of Force-Placement informed Plaintiff that U.S. Bank had purchased a second flood insurance policy for Plaintiff's property from American Security Insurance Company ("ASIC"), and enclosed a second "Memorandum of Insurance" from ASIC showing a coverage amount of $93,814 and a premium amount of $844.   *See Exhibit 8*.[5]   On information and belief, U.S. Bank and/or its affiliates also received a kickback or commission from ASIC on this lender-placed policy.

33.     The Second Notice of Force-Placement stated that "[t]he policy amount is based on the shortage in coverage between your required flood coverage and your current flood insurance policy."   This statement was false, deceptive, and misleading.   As noted above, the existing amount of flood insurance coverage already was excessive (*see supra* at ¶¶ 25, 29), and U.S. Bank conspicuously gave no explanation as to why this existing coverage was "deficient" or why it was suddenly necessary to increase Plaintiff's force-placed coverage from $64,488 to $93,814.

34.     The Second Notice of Force-Placement reiterated that "Coverage under this policy will only apply if a loss to the building exceeds the amount of coverage provided by your flood insurance policy."   *Exhibit 7*.   In addition, the Second Memorandum of Insurance reiterated that "THIS INSURANCE WILL NOT PROVIDE AN AMOUNT OF COVERAGE GREATER THAN THE NET AMOUNT YOU OWE ON THE MORTGAGE."   *Exhibit 8*.   As a result, the increased coverage was entirely ***worthless***, as Plaintiff's existing coverage already exceeded the amount he owed on the mortgage by more

---

[5] The second lender-placed policy was backdated to November 9, 2010, and replaced the first lender-placed policy (which was cancelled as of the same date).

than $30,000 (*see supra* at ¶ 29).  The combined value of the second force-placed policy ($93,814) and the master condominium policy ($69,387.50) now exceeded Plaintiff's outstanding principal balance by approximately $60,000.

35.     Plaintiff's escrow account was charged $844 for this second force-placed policy, resulting in another alleged "shortage" to Plaintiff's escrow account.  In order to recoup this alleged shortage, U.S. Bank significantly increased Plaintiff's mortgage payments.  This increase imposes a significant hardship on Plaintiff.  However, in order to protect his credit and his home, he has made these increased payments in full.

36.     After U.S. Bank purchased the second force-placed flood insurance policy out of Plaintiff's escrow account, Plaintiff contacted U.S. Bank and inquired why this additional coverage was necessary.  In response, U.S. Bank sent him a letter dated January 3, 2011, claiming that FEMA Guidelines mandate that "flood insurance coverage for a condominium unit ***must be equal to the replacement cost*** of the building divided by the number of units in the building[.]"   *Exhibit 9* (emphasis added).   This letter was false, deceptive, and misleading.  FEMA's Guidelines explicitly state that they do not carry the force of law and "are not intended to provide legal guidance."  *See* FEMA, NATIONAL FLOOD INSURANCE PROGRAM: MANDATORY PURCHASE OF FLOOD INSURANCE GUIDELINES vi (preface) (Sept. 2007) ("These guidelines . . . are not intended to provide legal guidance. . . .  FEMA does not have statutory responsibility for enforcing the mandate to purchase flood insurance."), *available at* http://www.fema.gov/good_guidance/download/10040.  In any event, FEMA's Guidelines give the borrower the option of insuring to "[t]he outstanding balance of the loan[.]"  *Id.* at 46.  According to the Guidelines:

The flood insurance amount required by statute for an applicable loan on a condominium unit must be at minimum the lowest of . . . :

- The outstanding balance of the loan(s); or

- The insurable value (replacement cost value) of the unit; or

- The maximum amount of insurance available under the NFIP for the type of property.

*Id.*

37.     U.S. Bank knew that it was not "required" to purchase either the first lender-placed policy or the second lender-placed policy, as evidenced by, *inter alia*, the following facts:

a)     Federal law does not require flood insurance in excess of the outstanding principal balance of the loan;

b)     HUD does not require flood insurance in excess of the outstanding principal balance of the loan;

c)     FEMA does not require flood insurance in excess of the outstanding principal balance of the loan;

d)     Plaintiff's mortgage does not require flood insurance in excess of the outstanding principal balance of the loan;[6]

e)     TD Bank did not require flood insurance in excess of the outstanding principal balance of the loan;

---

[6] Plaintiff's Mortgage does ***not*** state that the lender's insurance requirements can change. In this regard, Plaintiff's Mortgage differs from the current Fannie Mae/Freddie Mac Single Family Uniform Instrument for Connecticut, which states as follows in the section of the document pertaining to insurance: "What Lender requires pursuant to the preceding sentences can change during the term of the Loan." *See Exhibit 10, ¶ 5.*

    f)     U.S. Bank held and serviced Plaintiff's loan for nearly four years, without ever claiming that Plaintiff was "required" to obtain flood insurance in excess of the outstanding principal balance of his loan;

    g)     U.S. Bank did not and cannot identify any changes in federal law, the mortgage documents, or the circumstances surrounding the loan that justified U.S. Bank's representation that coverage in excess of Plaintiff's principal balance was "required"; and

    h)     The lender-placed policies purchased by U.S. Bank expressly disclaimed coverage in excess of the outstanding principal balance of the loan.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39.    Plaintiff asserts his breach of contract/breach of covenant of good faith and fair dealing claim (Count 1) on behalf of a proposed nationwide Excess Insurance Class defined as follows:

> **Proposed Nationwide Excess Insurance Class:**  All persons who were required by U.S. Bank, on or after November 2, 2005, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

40.    Plaintiff asserts his unjust enrichment claim (Count 2) on behalf of a proposed nationwide Lender-Placed Insurance Class defined as follows:

**Proposed Nationwide Lender-Placed Insurance Class:**  All persons who were charged for lender-placed flood insurance by U.S. Bank and/or paid such charges to U.S. Bank, in whole or in part, on or after November 2, 2005.

41.     Plaintiff asserts his breach of fiduciary duty/breach of trust claim (Count 3) on behalf of a proposed Escrow Sub-Class defined as follows:

**Proposed Escrow Sub-Class:**  All persons in the Excess Insurance Class or the Lender-Placed Insurance Class whose flood insurance premiums were escrowed by U.S. Bank.

42.     Plaintiff asserts his CUTPA claim (Count 4) on behalf of a proposed Connecticut Sub-Class defined as follows:

**Proposed Connecticut Sub-Class:**  All persons in the Excess Insurance Class or the Lender-Placed Insurance Class whose mortgage loan or line of credit with U.S. Bank was secured by real property in the State of Connecticut, and who were subject to U.S. Bank's flood insurance requirements and/or had lender-placed flood insurance coverage purchased for their property by U.S. Bank on or after November 2, 2008.

43.     <u>Numerosity</u>:   The Putative Classes are so numerous that joinder of all class members is impracticable.  Plaintiff is informed and believes that during the relevant time period, thousands of U.S. Bank's customers satisfy the definition of the Putative Classes.

44.     <u>Typicality</u>:     Plaintiff's claims are typical of the members of the Putative Classes.  Plaintiff is informed and believes that (1) Plaintiff's mortgage documents are typical of those of other Putative Class members; (2) the form letters that Plaintiff received are typical of those received by the other Putative Class members; (3) U.S. Bank treated Plaintiff consistent with other Putative Class members in accordance with U.S. Bank's uniform policies and practices; (4) it was typical for U.S. Bank to require its customers to purchase and maintain flood insurance in amounts greater than required by law, greater than required by their mortgage documents, and greater than required to insure the amount of funds extended to them; (5) it was typical for U.S. Bank and/or its affiliates to receive

kickbacks or commissions in connection with lender-placed flood insurance; and (6) it was typical for U.S. Bank to backdate lender-placed flood insurance policies.

45.    <u>Adequacy</u>:    Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation, including flood insurance litigation. *See Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900 (N.D.Cal. Mar. 31, 2011) (finding counsel of record to be adequate and appointing counsel as class counsel in class action lawsuit asserting similar claims).

46.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a)   whether federal law requires U.S. Bank's customers to purchase and/or maintain flood insurance in amounts greater than the amount of funds extended to them;

b)   whether U.S. Bank has a pervasive policy and practice of misrepresenting to customers that federal law requires flood insurance or additional flood insurance on loans or lines of credit for which flood insurance or additional flood insurance is not required by law;

c)   whether the mortgage documents relied upon by U.S. Bank authorize U.S. Bank to demand and/or force-place flood insurance in amounts greater than necessary to secure the amount of funds extended;

d)   whether U.S. Bank's form letters are false, deceptive, and/or misleading;

e)   whether U.S. Bank breached its mortgage agreements with customers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed;

f)   whether U.S. Bank owes its customers a duty of good faith and fair dealing, and if so, whether U.S. Bank breached this duty by, *inter alia*, (1) demanding flood insurance in amounts greater than necessary to secure the amount of funds extended and greater than required by federal law; (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed flood insurance; and (3) purchasing backdating flood insurance coverage for periods that already had elapsed;

g)   whether U.S. Bank owes its customers a fiduciary duty in connection with mortgage escrow accounts, and if so, whether U.S. Bank breached this duty by, *inter alia*, (1) paying for excessive amounts of flood insurance coverage out of escrow; (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed flood insurance purchased out of escrow; and (3) purchasing backdated coverage out of escrow;

h)   Whether U.S. Bank was unjustly enriched by its conduct;

i)   whether U.S. Bank's conduct as described herein violates the CUTPA;

j)   the appropriateness and proper form of any declaratory or injunctive relief; and

k)   the appropriateness and proper measure of monetary and other damages sustained by the Putative Classes.

47.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual class members would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for U.S. Bank.  Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

48.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because U.S. Bank has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

49.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. U.S. Bank's conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary flood insurance premiums and related charges that are readily calculable from U.S. Bank's records and other class-wide evidence.  Members of the Putative Classes do not have an interest in pursuing separate individual actions against U.S. Bank, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning U.S. Bank's practices.  Moreover, management of this action as a class action will not present any

likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

50.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from U.S. Bank's records.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT/ BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

51.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

52.     U.S. Bank is the lender-in-interest to Plaintiff's mortgage and is bound by the terms of his Mortgage.

53.     Plaintiff's mortgage does not require flood insurance coverage in an amount greater than federal requirements or the amount of his outstanding principal balance.

54.     U.S. Bank breached the terms of Plaintiff's mortgage by requiring Plaintiff to obtain and/or maintain flood insurance in excess of the amount required under his mortgage, and by force-placing flood insurance in excess of the amount required under his mortgage.

55.     U.S. Bank also breached the implied covenant of good faith and fair dealing inherent in Plaintiff's mortgage.

56.     U.S. Bank owed Plaintiff and the Excess Insurance Class a duty of good faith and fair dealing, by virtue of U.S. Bank's contractual relationship with Plaintiff and other Excess Insurance Class members.

57.     U.S. Bank breached this duty by, among other things: (1) misrepresenting both federal requirements and contractual requirements regarding flood insurance, (2)

demanding and/or force-placing flood insurance coverage in excess of the amount required by federal law or the relevant mortgage documents, and in excess of the amount required to protect U.S. Bank's legitimate financial interests; (3) unreasonably exercising in bad faith any purported discretionary authority U.S. Bank claims it was afforded under the loan and mortgage documents, (4) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant mortgage documents; (5) arranging for kickbacks, commissions, or other compensation for itself and/or its affiliates in connection with with lender-placed flood insurance; and (6) purchasing backdated or otherwise worthless flood insurance coverage at borrowers' expense.

58.     U.S. Bank willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; (2) depriving Plaintiff and other Excess Insurance Class members of their contractual and legal right to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the amount of funds extended; (3) unfairly and unconscionably maximizing revenue from Plaintiff and other Connecticut Class members; (4) generating commissions, kickbacks, or other compensation for U.S. Bank and/or its affiliates.

59.     The foregoing breaches were willful and not the result of mistake or inadvertence.  On information and belief, U.S. Bank systematically and pervasively required other Excess Insurance Class Members to obtain flood insurance in excess of the amount required under their mortgage documents, in excess of the amount required by federal law, and in excess of the amount that U.S. Bank could fairly and reasonably demand in good faith.

60.     As a direct result of U.S. Bank's breaches of contract and breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Excess Insurance Class members have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and/or other charges.

61.     Plaintiff and the Excess Insurance Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## <u>SECOND CLAIM FOR RELIEF</u>
### UNJUST ENRICHMENT

62.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

63.     U.S. Bank has been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

64.     U.S. Bank received a benefit from Plaintiff and other Lender-Placed Insurance Class members in the form of payment for force-placed flood insurance, and U.S. Bank and/or its affiliates retained a portion of these payments as commissions or other compensation.

65.     Retention of these payments by U.S. Bank would be unjust and inequitable. Federal law only allows lenders and servicers to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012(e)(2); *see also* 12 C.F.R. § 22.3.   U.S. Bank abused its discretion to pass through costs for force-placed flood insurance, by charging Plaintiff and other Lender-Placed Insurance Class members amounts in excess of the net costs incurred by U.S. Bank for such flood insurance and by retaining at least a portion of the premium payments as kickbacks, commissions or other compensation.

66.     The kickbacks, commissions or other compensation that U.S. Bank and/or its affiliates received in connection with force-placed flood insurance were not legitimately earned, and came at the ultimate expense of Plaintiff and other members of the Lender-Placed Insurance Class who had flood insurance force-placed on them by U.S. Bank.

67.     Because it would be unjust and inequitable for U.S. Bank and/or its affiliates to retain such payments, Plaintiff and the Lender-Placed Insurance Class are entitled to restitution of all monies unjustly and inequitably retained.  U.S. Bank cannot retain these payments in good conscience.

### THIRD CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY/BREACH OF TRUST

68.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

69.     Plaintiff's mortgage contains an escrow provision in Paragraph 2 of the mortgage, which is typical of other mortgages originated and/or serviced by U.S. Bank.

70.     Paragraph 2 of Plaintiff's mortgage provides that "Borrower shall include in each monthly payment . . . premiums for insurance[,]" including flood insurance.

71.     Paragraph 2 of Plaintiff's Mortgage further provides that the sums included in his monthly payment for insurance premiums are to be held in escrow by his lender.  These funds are to be used for the purpose of paying his insurance premiums when due, and any excess funds are to be returned to Plaintiff under the terms of his mortgage.

72.     U.S. Bank has accepted monies from Plaintiff for flood insurance premiums on a monthly basis and has held them in escrow, pursuant to Paragraph 2 of his mortgage.

73.     U.S. Bank was obligated to hold these escrow funds in trust, and owed Plaintiff a fiduciary duty with respect to the handling of such funds.

74.     U.S. Bank breached its fiduciary duty to Plaintiff and other members of the Escrow Sub-Class by (1) unilaterally using escrow funds to purchase flood insurance that Plaintiff and other class members did not want and were not required to obtain, (2) profiting from force-placed flood insurance policies that were purchased from escrow funds at the expense of Plaintiff and other class members; and (3) purchasing backdated flood insurance policies.

75.     These actions were undertaken by U.S. Bank in bad faith for its own benefit and were not intended to benefit Plaintiff or other borrowers.

76.     As a direct result of U.S. Bank's actions, Plaintiff and the Escrow Sub-Class have suffered injury from in the form of unnecessary and excessive escrow charges, a loss of funds from their escrow accounts, increased mortgage payments due to alleged escrow "shortages," and related injuries.

77.     Plaintiff and the Escrow Sub-Class are entitled to damages for U.S. Bank's beach of its fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Escrow Sub-Class are entitled to punitive damages because U.S. Bank acted in bad faith in deliberate and/or reckless disregard of their rights and its obligation to hold their escrow funds in trust.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")**
**Conn. Gen. Stat. § 42-110a,** *et seq.*

78.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

79.     The CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

80.     U.S. Bank has pervasively violated the CUTPA, and continues to violate the CUTPA, by virtue of the unfair and deceptive acts and practices described above.

81.     Among other things, U.S. Bank has violated the CUTPA by:

(A)     unfairly demanding and force-placing excessive and unnecessary flood insurance on property owned by Plaintiff and other Connecticut Class members, in amounts greater than required by law, greater than U.S. Bank's financial interest, and contrary to the amounts agreed upon in their loan and mortgage documents;

(B)     misrepresenting the amount of flood insurance that Plaintiff and other Connecticut Class members are required to maintain under federal law and/or their mortgage agreements;

(C)     deceptively claiming that U.S. Bank is "required" by federal law to force-place flood insurance in excess of the amount required under the National Flood Insurance Act;

(D)     unfairly arranging for kickbacks, commissions, or other compensation for itself and/or its affiliates in connection with force-placed flood insurance purchased for Plaintiff and other Connecticut Class members;

(E)     unfairly purchasing backdated flood insurance coverage for periods of time that already had elapsed;

(F)     misappropriating and/or misusing mortgage escrow funds that belong to Plaintiff and other Connecticut Class members; and

(G)     engaging in other unfair and/or deceptive conduct as set forth in the Complaint.

82.     U.S. Bank engaged in such violations for the purpose of (1) unfairly and unconscionably maximizing revenue from Plaintiff and other Connecticut Class members; (2) generating commissions, kickbacks, or other compensation for U.S. Bank and/or its affiliates; (3) gaining unwarranted contractual and legal advantages; and (4) depriving Plaintiff and other Connecticut Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the funds extended to them; and (5) inducing and/or forcing Plaintiff and other Connecticut Class members to procure unnecessary and/or excessive amounts of flood insurance.[7]

83.     U.S. Bank willfully engaged in such conduct and knew that it violated the CUTPA, or showed reckless disregard for whether it violated the CUTPA.

84.     As a result of U.S. Bank's violations of the CUTPA, Plaintiff and the Connecticut Class have been injured and have suffered actual damages and monetary losses in the form of increased insurance premiums, interest payments, and/or other charges.

85.     Plaintiff and the Connecticut Class members are entitled to actual damages, putative damages, injunctive relief, equitable relief, attorneys' fees and costs, and any other

---

[7] Plaintiff and the Connecticut Class reasonably and justifiably relied on Defendants to (among other things) fully, honestly, and fairly disclose the amount of flood insurance that was required for their property under their mortgages and federal law, and to interpret and/or apply such requirements reasonably and fairly in good faith.

remedies available under the CUTPA or in equity, for U.S. Bank's violations of the CUTPA. *See* Conn. Gen. Stat. § 42-110g.

86.     Pursuant to Conn. Gen. Stat. § 42-110g(c), Plaintiff is mailing a copy of this Complaint to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection.

## **PRAYER FOR RELIEF**

87.     WHEREFORE, Plaintiff, on behalf of himself and the Putative Classes, prays for relief as follows:

a)   Determining that this action may proceed as a class action under Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

b)   Designating Plaintiff's counsel as counsel for the Putative Classes;

c)   Designating Plaintiff as class representative for the Putative Classes;

d)   Issuing proper notice to the Putative Classes at U.S. Bank's expense;

e)   Declaring that U.S. Bank breached its contracts with Plaintiff and the Excess Insurance Class and its duty of good faith and fair dealing to Plaintiff and the Excess Insurance Class;

f)   Declaring that U.S. Bank's conduct was inequitable and that U.S. Bank was unjustly enriched by such conduct;

g)   Declaring that U.S. Bank breached its fiduciary duties to Plaintiff and the Escrow Sub-Class;

h)   Declaring that U.S. Bank's actions violate Conn. Gen. Stat. § 42-110a, *et seq*.;

i) Determining that U.S. Bank acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and other Putative Class members;

j) Awarding appropriate equitable relief, including but not limited to an injunction requiring U.S. Bank to reverse all unlawful, unfair, or otherwise improper charges for flood insurance coverage, allowing customers to close loans or credit lines without first paying premiums for flood insurance that was not necessary or required by law, prohibiting U.S. Bank from imposing unfair and unlawful flood insurance requirements on borrowers, prohibiting U.S. Bank and its affiliates from earning commissions or other compensation on force-placed flood insurance policies, prohibiting U.S. Bank from purchasing backdated flood insurance coverage,  and ordering U.S. Bank to cease and desist from engaging in further unlawful conduct in the future;

k) Awarding actual damages, punitive damages, penalties, and interest;

l) Awarding reasonable attorneys' fees and costs and expenses; and

m) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

88.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated:  November 2, 2011

**NICHOLS KASTER, PLLP**

Kai Richter, MN Bar No. 0296545
E. Michelle Drake, MN Bar No. 0387366
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com
        drake@nka.com

**ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES**